David W. Hall (SBN 274921)
dhall@hedinhall.com
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA  94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILL HANSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROCK HOLDINGS, INC., d/b/a CORE DIGITAL MEDIA; LMB MORTGAGE SERVICES, INC., d/b/a LOWERMYBILLS.COM; and DIGITAL MEDIA SOLUTIONS, LLC, d/b/a DCMG;<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff Bill Hansen, on behalf of himself and all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters:

## NATURE OF ACTION

1. Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Rock Holdings, Inc., doing business as Core Digital Media; LMB Mortgage Services, Inc., doing business as LowerMyBills.com; and Digital Media Solutions, LLC, doing business as Dcmg, in transmitting text message advertisements to Plaintiff's cellular device and the cellular devices of numerous others across the country, without "prior express written consent" within the meaning of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## JURISDICTION AND VENUE

2. The Court has original jurisdiction over this putative class action lawsuit pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper in this district because Plaintiff resides in this district and because Plaintiff's claims arose in substantial part in this district. Defendants directed the text messages received by Plaintiff into this district by transmitting the messages to a telephone number that is assigned an area code (916) corresponding to a location in this district. Plaintiff received Defendants' unsolicited text messages on his cellular device while present in this district.

## PARTIES

4. Plaintiff is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(39) and a citizen and resident of Janesville, California.

5. Defendant Rock Holdings, Inc. ("RHI"), doing business as Core Digital Media, maintains its corporate headquarters in Plymouth, Michigan and is a "person" as defined by 47 U.S.C. § 153(39). In 2017, Defendant RHI acquired the websites LowerMyBills.com and ClassesUSA.com from Core Digital Media, Inc.[1], and since that time has marketed and advertised the commercial availability of the services offered at those websites under the fictional name Core Digital Media.[2]

---

[1] *See* "Quicken Loans Parent Company Rock Holdings Acquires LowerMyBills and ClassesUSA," Yahoo! Finance, Jan. 6, 2017, available at https://finance.yahoo.com/news/quicken-loans-parent-company-rock-150551958.html (last accessed Janaury 28, 2019) ("Rock Holdings has agreed to acquire LowerMyBills, a consumer finance website designed to connect mortgage borrowers with lenders, and ClassesUSA, a higher-education portal that helps students find schools that match their needs. Both LowerMyBills and ClassesUSA were acquired from their parent company, Core Digital Media.").

[2] *See* Core Digital Media, available at http://www.coredigitalmedia.com (last accessed January 28, 2019) (stating that Core Digital Media's "online consumer acquisition platform" "fuel[s]" LowerMyBills.com "by an industry leading marketing platform which operates across a variety of financial and education markets working with more than 1000 unique partners"); *see also id.* ("Online Marketing" section of page stating: "Core Digital Media is a top 10 advertiser across display, paid search, mobile and social marketing making us the largest and most successful performance advertiser on the internet."); *id.* ("Technology" section of page stating: "Our technology team is responsible for the development and operations of all the consumer-facing web applications, our

6. Defendant LMB Mortgage Services, Inc. ("LMB"), doing business as LowerMyBills.com, maintains its corporate headquarters in Playa Vista, California and is a "person" as defined by 47 U.S.C. § 153(39). Defendant LMB is a subsidiary of Defendant RHI.

7. Defendant Digital Media Solutions, LLC ("DMS"), doing business as Dcmg, maintains its corporate headquarters in Clearwater, Florida and is a "person" as defined by 47 U.S.C. § 153(39). Defendant DMS is a "digital marketing agency that develops, executes and optimizes integrated, cross-channel marketing campaigns on behalf of [its] clients"[3] – including RHI and LMB, with which it collaborates as "Dcmg."

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

8. In 1991, Congress enacted the TCPA to address consumer complaints regarding abusive telemarketing practices. The TCPA prohibits, inter alia, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing", as defined by applicable regulations, the TCPA requires the "prior express <u>written</u> consent" of the called party before initiating such calls or texts via an autodialer.

9. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because such transmissions are a greater nuisance and invasion of privacy than live solicitation calls and receiving them can be costly and inconvenient.

10. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones.

---

marketing platform and internal tools. We are leaders in online advertising – with a mobile first mentality. The marketing platform is built in-house and customized using cutting-edge technologies. Our marketing technology is available internally and externally - enabling our marketing team and our partners to run more effective campaigns.").

[3] "DMS Digital Agency," Digital Media Solutions, LLC, available at https://digitalmediasolutions.com/digital-agency (last visited January 28, 2019).

- 3 -

CLASS ACTION COMPLAINT

According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[4]

11. SMS and Multimedia Messaging Service ("MMS") text messages are directed to wireless devices through telephone numbers assigned to the devices. When an SMS or MMS text message is transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS and MMS text messages are received virtually anywhere in the world.

12. Unlike more conventional advertisements, SMS and MMS text messages can actually cost their recipients money because many wireless phone users pay their service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

13. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion upon receipt.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

14. As set forth below, Defendant RHI, doing business as Core Digital Media; Defendant LMB, doing business as LowerMyBills.com; and Defendant DMS, doing business as Dcmg – collectively referred to herein at times as the "Defendants" – have acted and continue to act in concert with one another to oversee, manage, operate, and control the content, transmission, and intended targets of the SMS and MMS text messages that are delivered to consumers' cellular telephone numbers via the short-code telephone number 60107. Defendants collectively make and initiate the transmission of such messages for the purpose of advertising and funneling traffic to the LowerMyBills.com website, where Defendants provide mortgage-lending referral services to consumers for commercial profit.

---

[4] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited April 6, 2018).

- 4 -

CLASS ACTION COMPLAINT

15. Plaintiff is, and at all times mentioned herein was, the subscriber of the telephone number (916) ***-9577 (the "9577 Number"). The 9577 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

16. During 2018, including on or about November 2, 2018, Defendants transmitted or caused to be transmitted, by themselves or through an intermediary or intermediaries, one or more SMS or MMS text message(s) to the 9577 Number without Plaintiff's consent, an example of which is shown below:



17. The source of the SMS or MMS text message(s) sent by Defendants to the 9577 Number was 60107, which is a short-code telephone number leased or owned by Defendants, or an agent(s) or affiliate(s) of Defendants, and used for operating Defendants' SMS and MMS text message marketing campaigns, for the ultimate purpose of funneling traffic to the website lowermybills.com for commercial profit.

18. The hyper-linked URLs contained within Defendants' text messages, including the URL appearing in the above-depicted text message sent to the 9577 Number, direct recipients to webpages hosted on servers that are leased or owned by Defendant DMS, via a domain name (dcmg.com) that is leased or owned by Defendant DMS.

19. When accessed, the webpages hosted on Defendant DMS's servers, accessible via Defendant DMS's dcmg.com domain name, immediately redirect visitors to webpages that are hosted at lowermybills.com. Lowermybills.com is a domain name leased or owned by Defendants RHI and LMB, and the webpages accessible via the domain name are hosted on servers leased or owned by Defendants RHI and LMB.

20. Plaintiff is informed and believes, and thereupon alleges, that the Defendants collectively operate and control the dcmg.com-hosted webpages to which Defendants' text messages initially direct recipients, and that Defendants RHI and LMB operate and control the lowermybills.com webpages to which visitors are thereupon redirected.

21. On the lowermybills.com-hosted webpages, Defendants make mortgage-loan referral services available to consumers, which, when utilized, generate commercial profit for Defendants, in the form of referral fees and other kickbacks from the lenders who ultimately loan money to the leads generated from such services.

22. Defendants collectively operate, oversee, and control the 60107 short code and are collectively responsible for the initiation of the messages that are sent from it. By way of illustration, the lowermybills.com website, which is owned and operated by Defendants LMB and RHI, discussed above, states in pertinent part that "[o]ur mobile text messages are intended for subscribers over the age of 18 and are delivered via U.S. short code 60107," and that "[y]ou may elect to stop receiving marketing or promotional texts at any time by text messaging STOP to short code 60107."[5]  Defendant DMS likewise makes a feature

---

[5] "Our Privacy Notice," LowerMyBills.com, Last updated: June 29, 2018, available at https://www.lowermybills.com/legal/privacy/ (last accessed January 28, 2019); *see also* "SMS Marketing Manager," Core Digital Media, available at https://jobs.lever.co/coredigitalmedia/0ac499a8-1915-4f66-9975-2f9d00bf1b81 (last accessed January 28, 2019) (Defendant RHI, doing business as Core Digital Media, seeking a "SMS marketing Manager" to operate its "industry leading marketing platform," which "fuel[s]" such websites as "LowerMyBills.com and ClassesUSA.com," and describing the position as follows: "We are seeking a SMS Marketing Manager to build a text message-based consumer re-engagement strategy from the ground up. This strategic, creative, and analytical role calls for a metrics focused marketer with demonstrable experience in the SMS channel, including experience handling vendors and negotiating access to short codes. As the subject-matter authority, you are responsible for;

available on the homepage of its dcmg.com domain name (http://dcmg.com) for individuals to use to stop Defendants from transmitting further text messages to their telephone numbers from 60107 (by "entering [their] phone number[s]" in a form field and pressing "Unsubscribe"), as shown in the screenshot below:

[Dcmg logo] You can stop most Messages by texting stop as a reply to the message. You may also request so by entering your phone number here: [Phone number] [Unsubscribe]

23. Before receiving Defendants' autodialed SMS or MMS text message advertisement on November 2, 2018, as depicted in paragraph 16 above, Plaintiff had never provided his 9577 Number to any of the Defendants, nor has Plaintiff provided the 9577 Number to any of them at any time since.

24. Plaintiff is informed and believes, and thereupon alleges, that Defendants acquired the 9577 Number through "skip tracing," via a technological service (such as, for example, one provided by Experian or Accurint or another third party) utilized by Defendants either in an unsuccessful attempt to contact another individual or to intentionally contact individual(s) believed to be associated in some way with another individual. Plaintiff is informed and believes, and thereupon alleges, that Defendants transmitted unsolicited SMS and MMS text messages to telephone numbers, including the 9577 Number and the unnamed Class members' cellular telephone numbers, that Defendants had acquired via skip tracing performed against, *inter alia*, property records, mortgage deeds, and other public records.

25. Because Plaintiff is alerted by his cellular device, by auditory or visual means, whenever he receives a text message sent to the 9577 Number, the unsolicited SMS or MMS text message(s) that Defendants transmitted to the 9577 Number were invasive and intruded

---

developing, planning, analyzing the SMS channel to best drive company goals, as well as ensuring and maintaining the strong performance of all SMS marketing campaigns.").

upon Plaintiff's seclusion. Plaintiff became distracted and aggravated upon receiving each of Defendants' text messages.

26. Defendants utilized an "automated telephone dialing system" to transmit the aforementioned text messages to the 9577 Number because such messages were sent from an SMS short code, which is a telephone number used to message consumers *en masse*; because Defendants' automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendants to send such messages have the capacity to store, produce, and dial random or sequential numbers, or to receive and store lists of telephone numbers, and to then dial such numbers, *en masse*, in an automated fashion and without human intervention. And indeed, Defendants actually transmitted the text messages at issue in this case to Plaintiff and all other putative class members in an automated fashion and without human intervention, with hardware and software that received and stored lists of telephone numbers to be dialed and which then dialed such numbers automatically.

27. The complained of SMS text messages sent by Defendants to the 9577 Number and the numbers of the proposed Class members constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendants sent the messages in order to advertise and market the commercial availability of their loan referral and computerized matching services for commercial profit.

28. Plaintiff never provided his "prior express written consent" or any other form of consent to Defendants or any affiliate, subsidiary, or agent of Defendants to transmit SMS or MMS text messages to the 9577 Number by means of an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

## CLASS ALLEGATIONS

29. <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant

to Fed. R. Civ. P. 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons in the United States who, at any point from the beginning of the applicable four-year statutory period through the date of any order granting class certification, received one or more SMS or MMS text message(s) from the short-code telephone number 60107 without having provided prior express written consent to any of the Defendants to receive such text message(s).

30. Defendants, their employees and agents are excluded from the Class.

31. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

32. Plaintiff and all Class members have been impacted and harmed by the acts of Defendants and/or their affiliates or subsidiaries.

33. This Class Action Complaint seeks injunctive relief and monetary damages.

34. This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

35. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

36. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

37. <u>Typicality</u>. Plaintiff received at least one SMS or MMS text message, without providing his "prior express written consent" to Core Digital Media, Inc. or LMB Mortgage

Services, Inc. within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interest is consistent with and not antagonistic to those of the other Class members he seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendants' violations or misconduct as alleged herein.

38.   <u>Adequacy</u>. As Class representative, the Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

39.   <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other data privacy and consumer protection statutes.

40.   <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances, include (but are not limited to) the following:

   a) Whether Defendants or affiliates, subsidiaries, or agents of Defendants transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;
   b) Whether such messages were sent using an "automatic telephone dialing system";

      c) Whether Defendants or affiliates, subsidiaries, or agents of Defendants can meet their burden to show Defendants obtained prior express written consent to send the text messages complained of, assuming such an affirmative defense is raised;

      d) Whether Defendants or affiliates, subsidiaries, or agents of Defendants should be enjoined from engaging in such conduct in the future.

41. *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class members can be readily located and notified of this class action through Defendants' records and, if necessary, the records of cellular telephone providers.

42. Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendants.

43. Defendants or any affiliates, subsidiaries, or agents of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, Plaintiff is informed and believes, and thereupon alleges, that the TCPA violations complained of herein are substantially likely to continue in the future absent an injunction.

### CLAIM FOR RELIEF
### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

44. Plaintiff incorporates by reference paragraphs 1-43 of this Class Action Complaint as if fully stated herein.

45. The foregoing acts and omissions constitute violations of the TCPA by Defendants, including but not limited to violations of each of the above-cited provisions of 47 U.S.C. § 227.

46. As a result of Defendants' violations of 47 U.S.C. § 227, including without limitation 47 U.S.C. § 227(b)(1), Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

47. As a result of Defendants' violations of 47 U.S.C. § 227, including without limitation 47 U.S.C. § 227(b)(1), Plaintiff and all Class members are entitled to, and do seek, an award of statutory damages of $500.00 for each and every text message transmitted in violation of the TCPA (or $1,500.00 for any willful or knowing violations) pursuant to 47 U.S.C. § 227(b)(3).

48. Plaintiff and Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bill Hansen prays for relief and judgment favor of himself and each proposed class member, as follows:

A. Statutory damages of $500.00 for each and every text message sent to Plaintiff and every other class member in violation of the TCPA (or $1,500.00 for any such willful or knowing violation) pursuant to 47 U.S.C. § 227(b)(3);

B. Injunctive relief prohibiting such violations of the TCPA in the future;

C. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

D. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  January 29, 2019                     Respectfully submitted,

                                             HEDIN HALL LLP

                                             By: /s/ David W. Hall

                                             David W. Hall (SBN 274921)
                                             dhall@hedinhall.com
                                             Four Embarcadero Center, Suite 1400
                                             San Francisco, CA  94104
                                             Telephone: (415) 766-3534
                                             Facsimile: (415) 402-0058

                                             *Counsel for Plaintiff Bill Hansen*

- 13 -
CLASS ACTION COMPLAINT