UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILL HANSEN,<br><br>    Plaintiff,<br><br>v.<br><br>ROCK HOLDINGS, INC., et al.,<br><br>    Defendants. | No. 2:19-cv-00179-KJM-DMC<br><br><br>ORDER |

In this case, brought under the Telephone Consumer Protection Act (TCPA), defendants move to stay the case and compel arbitration. For the following reasons, the motion is DENIED.

I.    <u>BACKGROUND</u>

Plaintiff Bill Hansen filed this lawsuit on behalf of himself and all those similarly situated, alleging defendants violated the TCPA by sending texts advertising mortgage refinancing services without the recipients' consent. Am. Compl., ECF No. 13, ¶¶ 14–31, 48 (citing 47 U.S.C. § 227 (TCPA)). Specifically, plaintiff alleges defendants sent a text to his cellphone number ending in 9577 stating:

> willena – Regarding your monthly payment for your Roseville home. Come back and see your potential savings in 2 minutes.
>
> \*\* http://dcmg.com/adgTdKbj_\*\*

      LMB Reply STOP to stop[.]

*Id.* ¶ 16.

    Defendants LMB Mortgage Services, Inc., d/b/a LowerMyBills.Com ("LMB") and CPL Assets, LLC, d/b/a Core Digital Media Solutions filed a motion to compel arbitration of plaintiff's claims and stay the case pending arbitration. Mot., ECF No. 23. Defendant Digital Media Solutions, LLC, d/b/a DCMG joined the motion to compel. ECF No. 26. Defendants argue plaintiff should be compelled to arbitrate his TCPA claim because he agreed to LMB's Terms of Use, which include a provision requiring arbitration of "all claims, disputes or controversies between [plaintiff] and LMB, and its parents, affiliates, subsidiaries or related companies . . . ." Mot. at 9–10. According to defendants, plaintiff agreed to these Terms of Use in March 2014 when he entered his information into LowerMyBills.com and clicked the button labeled "Click to See Your Free Results!" (the "submit button"). *Id.* at 8. In so doing, defendants argue, plaintiff manifested his agreement to LMB's Terms of Use, because the following statement appeared right above the button:

> By clicking the button, you agree to the <u>Terms of Use</u> and <u>Privacy Policy</u> to be matched with up to 5 participants in the LMB Partner Network and consent (not required as a condition to purchase a good/service) for us and/or them to contact you (including through automated or prerecorded means) via telephone, mobile device (including SMS and MMS), and/or e-mail about lending information . . . ."

*Id*. (explaining "Terms of Use" and "Privacy Policy" are hyperlinked on the website). In support of their argument, defendants offer LMB company records and an accompanying declaration suggesting the following information, referred to here as the "Hansen information," was entered into LowerMyBills.com and submitted using the submit button[1]:

   1. Name: Willena Hansen

   2. Telephone Number: (916) ***-9577

   3. E-mail address: williern***

---

[1] Though the following information does not fall within the categories that must be redacted under Local Rule 140(a), in recognition of privacy interests, the court includes here only what is directly relevant to the instant motion.

    4. Property Address: *** Americana Drive, Roseville, California

    5. Current Property Value: $***

    6. Current Mortgage Balance: $***

    7. Current Interest Rate: ***%

    8. Assessment of Current Credit: ***

Mot. at 7. It is undisputed that Willena Hansen, who died recently, was plaintiff Bill Hansen's mother, and the telephone number ending in 9577 belongs to Bill Hansen. *See* Mot. at 7; Hansen Decl. ¶¶ 4–5, ECF No. 30; Compl. ¶ 15. It is also undisputed that Bill Hansen, his wife, and Willena Hansen at one point jointly owned the Americana Drive property in Roseville, California (the "Roseville property") as joint tenants. Vogt Decl. ¶¶ 3–4, ECF No. 23-2 (explaining title search revealing ownership of the Roseville property). The parties dispute whether the e-mail williern*** belongs to Bill Hansen or Willena Hansen. Mot. at 7 (citing Vogt Decl. ¶ 7 & Ex. 6); Hansen Decl. ¶ 5. Defendants also offer evidence suggesting the Roseville property was refinanced using Assent, LLC, three months after LMB claims to have sent plaintiff a referral to Assent, LLC, Mot. at 14 (citing Vogt Decl. ¶ 5 & Ex. 3); plaintiff does not dispute that the refinancing occurred, Opp'n, ECF No. 28, at 17.

  Plaintiff declares under penalty of perjury that he never visited the website LowerMyBills.com, never entered any of the Hansen information and never clicked the submit button. Hansen Decl. ¶¶ 2–3. Therefore, he argues, he is not bound by the arbitration clause in the Terms of Use, and his claim should proceed in district court. Opp'n at 8.

  Defendants LMB and CPL Assets filed a joint reply, ECF No. 33, and defendant Digital Media Solutions, LLC filed a separate reply, ECF No. 34. The court held a hearing on July 12, 2019, and resolves the motion here: because genuine disputes of material fact exist as to whether plaintiff is bound by LMB's Terms of Use, as explained below, the court DENIES the motion to compel.

II.  LEGAL STANDARD

  Congress enacted the Federal Arbitration Act, 9 U.S.C. the FAA, "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563

U.S. 333, 339 (2011) (citations omitted). Section two of the FAA is its "primary substantive provision." *Id.* at 339 (citation omitted). It states: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). "A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Kindred Nursing Centers Ltd. P'hip v. Clark*, 137 S. Ct. 1421, 1426 (2017) (quoting *Concepcion*, 563 U.S. at 339).

Section 4 of the FAA allows district courts to hear motions to compel arbitration. 9 U.S.C. § 4. "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). The party moving to compel arbitration bears the burden of showing each of these elements by a preponderance of the evidence. *See BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 60 (2014) (it is for the court, not the arbitrator, to resolve a dispute regarding the consent of the parties to arbitration); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (party moving to compel bears burden of showing these elements); *Knutson*, 771 F.3d at 565 (applying preponderance of the evidence).

In considering a motion to compel arbitration, the court applies a standard similar to that used in resolving summary judgment under Federal Rule of Civil Procedure 56. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citation omitted); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("[D]enial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration[.]");

4

*Greystone Nevada, LLC v. Anthem Highlands Cmty. Ass'n*, 549 F. App'x 621, 623 (9th Cir. 2013) (reversing order compelling arbitration where the opposing party was afforded no opportunity to present evidence and argument). The party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, *Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394 (9th Cir. 2017) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)). Only when no genuine disputes of material fact surround the arbitration agreement's existence may the court compel arbitration. *Concat*, 350 F. Supp. 2d at 804.

Nevertheless, if the gateway requirements are met, the decision to compel arbitration is mandatory, not discretionary, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18 (1985), and federal law favors arbitration agreements, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

III. <u>DISCUSSION</u>

The parties do not dispute the FAA governs this motion to compel. Primarily, the parties' dispute is over the first "gateway" issue, whether the parties agreed to arbitrate. On this threshold issue, defendants have not met their burden of showing there are no genuine disputes of material fact as to the arbitration agreement's existence. Therefore, the motion to compel is DENIED.

"Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141 (citation omitted). "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.* (citation omitted). The court can only grant the motion if there is "no genuine issue of fact concerning the formation of the agreement" and the issue can be decided as a matter of law. *Id.* (citation omitted).

Here, defendants offer two, alternative theories to explain how plaintiff is bound by the arbitration clause in LMB's Terms of Use. The first theory is that plaintiff Bill Hansen,

referred to here as "Bill" to avoid confusion with Willena Hansen, entered his mother's name and his own phone number into the site LowerMyBills.com and pressed the submit button, thereby indicating he agreed to LMB's Terms of Use containing the arbitration clause. Mot. at 41. Defendants' second theory, framed as the "only other possible alternative," is that plaintiff's mother, Willena Hansen ("Willena") entered her name and Bill's cellphone number into the website and pressed the same button, thereby binding her and Bill to the Terms of Use by virtue of their relationship as joint tenants. *Id.* The court analyzes the two scenarios in turn.

      A.      <u>Whether Bill Agreed to LMB's Terms of Use</u>

A genuine dispute of material fact exists regarding whether Bill ever clicked the button on LMB's website indicating he agreed to the Terms of Use. Defendants offer the following evidence to prove he did:

(1) LMB's general counsel Mitch Viner submits a declaration based on "own personal knowledge," after having reviewed LMB company records. Viner Decl., ECF No. 23-3, ¶ 9. Viner states that LMB company records show "a consumer with the last name 'Hansen'" and Bill's telephone number "navigated to LMB's website on March 11, 2014" and entered the Hansen information, *id.*;

(2) The declaration attaches an LMB company record which shows the Hansen information populated in a spreadsheet, Viner Decl., Ex. 2;

(3) Viner states LMB's website generated a unique "Lead ID," which only occurs if an individual clicks the button after entering his or her information, and that the Lead ID here was associated with the Hansen information, Viner Decl. ¶ 10; Viner Reply Decl. ¶ 5;

(4) Viner states the LMB company records show LMB transmitted the Lead ID associated with the Hansen information to Assent, Inc., Viner Decl. ¶ 10;

(5) The declaration attaches an LMB company record that shows the Lead ID (called "Inquiry Quality Tracking Code" in the document) was generated, was associated with the Hansen information, and also was associated with Assent, Inc., Viner Decl., Ex. 3;

/////

/////

(6) Counsel for LMB, John A. Vogt, submits a declaration stating he ran a title search on the Roseville property and found the mortgage was refinanced with Assent, Inc., Vogt Decl., ECF No. 23-2, ¶¶ 3–5; and

(7) Records from First American Title indicating Bill refinanced the mortgage on the Roseville property with Assent, Inc., Vogt Decl., Exs. 2–3.

In opposition, plaintiff offers his own declaration stating:

> I have never in my life visited the website LowerMyBills.com or any other websites associated with LMB . . . . I have never inputted my telephone number or any other personal information or contact information into the intake fields located on any such websites, have never clicked any buttons on any such websites, have never submitted any information through any such websites, and have never received notice of or agreed to any purported terms of service related to any such websites.

Hansen Decl. ¶¶ 2–3. Defendants do not object to this declaration testimony. *See* Defs.' Objs., ECF No. 33-1. In addition, plaintiff submits three sworn declarations from third parties who visited LowerMyBills.com and entered personal information, did not press the submit button, but still received text messages from LMB affiliates, such as Quicken Loans, Inc. Hall Decl., Ex. F, ECF No. 29-6.

Not only does Bill testify under oath that he never visited LowerMyBills.com, defendants' own evidence does not prove he did. Defendant does not explain why Willena's name, not Bill's, appears in LMB's company records. Moreover, defendants' evidence suggesting Bill or his mother clicked the submit button, because that is the only way LMB would have collected and transmitted Bill's personal information, is called into doubt by plaintiff's uncontroverted evidence of other consumers receiving text messages despite never clicking the submit button. *See* Hall Decl., Ex. F.[2] A reasonable inference is that anyone, including Bill or Willena, could have entered the Hansen information into the website, never pressed the submit button and experienced the same result.

/////

---

[2] Because these third-party declarations are relevant as described herein, defendants' objection to their consideration is OVERRULED. *See* Defs.' Objs. ¶ 7 (citing Fed. R. Evid. 401).

7

Drawing all inferences in plaintiff's favor, a genuine dispute of material fact exists regarding whether Bill has ever visited LowerMyBills.com and whether he clicked the submit button and agreed to the Terms of Use. Accordingly, the court cannot find a valid arbitration agreement exists between the parties unless defendants' alternative theory is successful.

B. <u>Whether Willena Agreed to LMB's Terms of Use.</u>

In support of the fallback theory that Willena must have agreed to LMB's Terms of Use, defendants offer the same evidence as above. In response, plaintiff avers he "does not recall" Willena ever using his contact information in interacting with any third parties and he is "certain she would never have inputted [his] name, telephone number, or other personal information or contact information into any website or other form without [his] prior express permission." Hansen Decl. ¶ 5. In reply, defendants object to this portion of Bill's declaration as speculation, arguing Bill has not established he has personal knowledge that his mother never entered information into any website without his permission. Defs.' Objs. ¶ 1 (citing Fed. R. Evid. 602). Because plaintiff has not established he has personal knowledge of Willena's actions that occurred outside of his presence, and therefore he could not have personal knowledge of his testimony in paragraph five, defendants' objection is SUSTAINED. *See Kesey, LLC v. Francis*, No. CV. 06-540-AC, 2009 WL 909530, at *20 (D. Or. Apr. 3, 2009) (finding declarant could not prove third party never made certain statements to others, because declarant lacks personal knowledge of third party's statements outside his presence), *adopted*, No. CIV. 06-540-AC, 2009 WL 1270249 (D. Or. May 5, 2009), *aff'd*, 433 F. App'x 565 (9th Cir. 2011).

Furthermore, Bill testifies that, before Willena passed away, he asked her whether she had entered his cellphone number into the LMB website and "in response, [his] mother unequivocally and categorically stated that she had not done so . . . ." Hansen Decl. ¶ 6. Defendants also object to this statement as inadmissible hearsay. Defs.' Objs. ¶ 2 (citing Fed. R. Evid. 802). Because Bill's statement reports what he says his mother told him, to the extent Bill offers this statement for the truth of the matter asserted, the statement is inadmissible hearsay and defendants' objection here as well is SUSTAINED.

/////

On a motion to compel, as with a summary judgment motion, the court can only consider evidence that could be presented in an admissible form. *See Stover-Davis v. Aetna Life Ins. Co.*, No. 1:15-CV-1938-BAM, 2016 WL 2756848, at *3 (E.D. Cal. May 12, 2016) (citing Fed. R. Civ. P. 56(c)(2)). In other words, if the content of the evidence is not admissible, the court cannot consider it. *Id.* (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)). Because the content of plaintiff's evidence cited above would be inadmissible at trial, the court does not consider it, leaving plaintiff with no admissible evidence to counter defendants' evidence suggesting Willena agreed to the Terms of Use.

However, even assuming Willena agreed to LMB's Terms of Use, defendants have not shown Bill would be bound by them.

### C. Whether Bill Would be Bound by the Terms of Use

At hearing, Bill argued that even if his mother did press the button and agree to the Terms of Use, as a matter of law, Bill is not bound by the agreement. On the record before the court, Bill is correct.

Under California law, there are three relevant ways in which a non-signatory can be bound by an agreement to arbitration: "(1) equitable estoppel; (2) agency; and (3) third-party beneficiary." Mot. at 14 (quoting *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013)). Defendants argue all three apply here. *Id.* The court addresses each in turn.

#### 1. Equitable Estoppel

First, defendants argue Bill is equitably estopped from denying the Terms of Use apply to him because he has "availed himself of LMB's free referral service by refinancing the Property with Assent, Inc." Mot. at 15 (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" (citation omitted))).

Even assuming Bill or Willena used a lead provided by LMB to refinance the Roseville property, Bill would not be equitably estopped from challenging the arbitration agreement. Equitable estoppel of third parties in the context of arbitration agreements is "narrowly confined." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229–30 (9th Cir. 2013) (citation

omitted).  The Ninth Circuit has rejected an argument similar to defendants' in *Rahmany v. T-Mobile USA Inc.*, 717 F. App'x 752, 753 (9th Cir.), *cert. denied sub nom. Subway Sandwich Shops, Inc. v. Rahmany*, 139 S. Ct. 211 (2018).  There, the court held plaintiff was not equitably estopped from challenging the arbitration clause in the contract at issue because the TCPA claim did not constitute a "claim of [a] violation" of plaintiff's wireless contract with the defendant wireless provider.  *Id.*  "The TCPA," the court explained, "not the Wireless Agreement, creates and defines any alleged duty to refrain from sending an unwanted text message."  *Id.*  Similarly, here, Bill's TCPA claims do not assert a violation of the Terms of Use, and therefore equitable estoppel does not apply.  The fact that the Terms of Use appear to authorize the text messages in question does not change this conclusion.  *See id.* (rejecting similar argument, because consent is affirmative defense, not element of claim).

          2.        <u>Agency</u>

Second, defendants argue Bill is bound by the arbitration clause because Willena would have been acting as Bill's agent assuming she used LMB's website in search of refinance referrals for the property she and Bill owned jointly.  Mot. at 15 (citing *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759, 765 (2005) ("A nonsignatory to an agreement to arbitrate may be required to arbitrate . . . [if] an agency relationship between the nonsignatory and one of the parties to the arbitration agreement[] makes it equitable to impose the duty to arbitrate upon the nonsignatory.")).  Defendants provide no evidence to show Bill "maintain[ed] control over" Willena's actions, a necessary element of an agency relationship. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) (citing *DeSuza v. Andersack,* 63 Cal. App. 3d 694 (1976) ("The right of the alleged principal to control the behavior of the alleged agent is an essential element which must be factually present in order to establish the existence of agency, and has long been recognized as such in the decisional law.")).  To the contrary, Bill's declaration expressly denies ever entering into any agency relationship with his mother in relation to LMB or any online referral service.  Hansen Decl. ¶ 8.  Defendants do not object to this

/////

10

testimony.  Because defendants cannot show Willena acted as Bill's agent, defendants' argument that Bill is bound by the arbitration clause under an agency theory also fails.

### 3. Third Party Beneficiary

Third, defendants argue Bill is bound by the arbitration provision as a third-party beneficiary, because his mother clearly intended for him to benefit from her agreement with LMB.  Mot. at 15 (citing *Nguyen v. Tran*, 157 Cal. App. 4th 1032, 1036–37 (2007)).  This argument is also unavailing.  Defendants' only evidence suggesting Willena may have intended Bill to benefit from her interactions with LMB is the fact the cellphone number entered belongs to Bill and the fact the Roseville property's was refinanced using one of LMB's referrals. Regardless of whether this evidence alone would suffice, Bill's testimony to the contrary creates a genuine dispute of material fact.  Hansen Decl. ¶ 8 ("I have never in my life formed, entered into, known of, ratified, or acted in accordance with any purported agency or third-party beneficiary relationship with my mother in connection with any relationship with LMB.").

Therefore, even assuming defendants could prove by a preponderance of the evidence that Willena agreed to LMB's Term of Use, the court cannot find that, as a matter of law, Bill is bound by that agreement and can be compelled to arbitrate as a result.

## IV. RESOLUTION OF FACTUAL DISPUTES

The factual disputes identified above are for a finder of fact, not the court as an arbiter of legal questions.  As the Ninth Circuit has explained, "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.  If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury."  *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141 (citation omitted).

Defendants argue the court should act as a factfinder here, because defendants are moving for a stay pending arbitration and therefore the matter falls under § 3 of the FAA,[3] rather

---

[3] Section 3 of the FAA reads:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court in which

11

than § 4.[4] Joint Reply at 14 & n.5 (citing *J&R Sportswear & Co. v. Bobbie Brooks, Inc.*, 611 F.2d 29, 30 (3d Cir. 1979) (rejecting notion plaintiff "was entitled to a jury trial" on arbitration because "plain language of section 3 refers to the court the decision on an application for a stay")). However, § 3 establishes a prerequisite to granting a stay, namely that the court find that the dispute is "referable to arbitration under such an agreement," a purely legal question. 9 U.S.C. § 3 (providing in pertinent part the district court shall grant a stay pending arbitration "upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement"). By contrast, § 4 expressly reserves for a jury the decision whether an agreement to arbitrate was formed. 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily[5] to the trial

---

> such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.

[4] Section 4 of the FAA reads:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof . . . . Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure . . . .

9 U.S.C. § 4.

[5] The meaning of "summarily" appears to depend on the context of the case and may depend on plaintiff's insistence to proceed to trial on an expedited basis. *See Burch*, 861 F.3d at 1347 (finding no miscarriage of justice where district court allowed full discovery and 45 months before conducting trial on arbitration issue, in part because plaintiff did not make demand to expedite); *Clifford v. Trump*, No. CV1802217SJOFFMX, 2018 WL 5263189, at *1 (C.D. Cal. Mar. 29, 2018) (suggesting limited discovery on relevant factual issues over one or two months

thereof."). Although "[a] motion to stay court proceedings and compel arbitration is an equitable defense," and therefore the party resisting arbitration has no constitutional right to a jury on that issue,

> [i]n certain circumstances, the party does . . . have a statutory right to a jury trial on the issue. Specifically, 9 U.S.C. § 4 provides that 'if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue . . . the party alleged to be in default may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury.'

*Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1347 (11th Cir. 2017) (quoting 9 U.S.C. § 4) (other internal quotation marks omitted). Where, as here, the existence of an agreement to arbitrate is in issue, plaintiff has such a right, and he is standing on it here. *See* 9 U.S.C. § 4; *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141.

Even under the Third Circuit's reasoning in *J&R Sportswear*, the instant motion requires a jury to resolve factual issues because the pending motion is one to compel as well as a motion to stay, and the latter necessarily requires resolution of the former. *Compare Teshome v. O'Melveny & Myers, LLP*, No. CV05-3664 FMC (PJWX), 2006 WL 8434414, at *2 (C.D. Cal. May 25, 2006) (noting court ordered jury trial on issue of formation of agreement to arbitrate where defendant filed motion to stay litigation and compel arbitration), *and Burch*, 861 F.3d at 1342 (finding issue of formation entitled plaintiff to jury trial if he had demanded one, even though defendant filed both a motion to stay and compel arbitration), *with J & R Sportswear & Co.*, 611 F.2d at 30 (analyzing only a motion to stay pending arbitration and holding it is controlled by § 3). Here, the court reserves the resolution of the factual disputes to a jury.

V. <u>REQUEST TO FILE UNDER SEAL</u>

As part of their joint reply to plaintiff's opposition, defendants LMB and CPL Assets filed a request to seal Exhibits 2 and 3 to the Declaration of Mitch Viner in Support of Defendants' Reply. Req. to Seal, ECF No. 33-4. As the aforementioned declaration explains,

---

before trial on arbitration issue appropriate, where party moved to expedite trial). With no such request here, the court will not schedule a trial on this issue *sua sponte*, but will proceed with the case, including discovery, in due course.

Exhibit 2 is the "Agreement and Plan of Merger" between LowerMyBills, Inc. and LMB Mortgage Services, Inc. and Exhibit 3 is the contribution agreement between CPL Assets, LLC and CPL Holdings, LLC. Viner Reply Decl. ¶ 13. These documents were offered as evidence to counter plaintiff's assertion that "LMB Mortgage Services, Inc. d/b/a LowerMyBills.com and CPL Assets, LLC, d/b/a Core Digital Media did not 'even exist[] in their present form in 2014 when the agreement was purportedly formed.'" *Id.* ¶ 12 (citing Opp'n at 2 n.1). Because the court does not reach this question in resolving the motion to compel arbitration, the court has not considered or relied on Exhibits 2 and 3 in any way. Accordingly, the request to seal is DENIED as moot, and the documents will be returned to counsel as provided by the local rules. *See* L.R. 141(e)(1).

For the foregoing reasons, IT IS HEREBY ORDERED:

1. Defendants' motion to compel arbitration and stay the case, ECF No. 23, is DENIED.
2. Defendants' request to seal documents, ECF No. 33-4, is DENIED as moot, and the documents returned to counsel as provided by the local rules.
3. The parties shall file a Joint Status Report within fourteen (14) days proposing a schedule for the remainder of the case.

IT IS SO ORDERED.

DATED: January 17, 2020.

CHIEF UNITED STATES DISTRICT JUDGE